COATS & CLARK'S SALES CORPORATION ET AL.
*v.* BARBARA H. STEWART ET AL.

[No. 123, September Term, 1977.]

*Decided March 8, 1978.*

The cause was argued before DAVIDSON, MELVIN and WILNER, JJ.

*B. Ford Davis* for appellants.

*Herbert J. Arnold,* with whom were *Robert Earl Wilson* and *Arnold, Beauchemin & Huber, P.A.* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

John A. Stewart died as a result of injuries received in an automobile accident. His widow, Barbara H. Stewart (wife), filed a "Dependent's Claim" with the Workmen's Compensation Commission (Commission), seeking benefits for herself, her deceased husband and their minor child (appellees). Benefits were denied because Mr. Stewart (husband) had not sustained an injury "arising out of and in the course of employment."

On appeal to the Circuit Court for Baltimore County, Judge Marvin J. Land reversed the order of the Commission and granted summary judgment in favor of the wife and child. He remanded the case to the Commission for a determination of "the issue of dependency." The appellants, Coats & Clark's Sales Corporation (employer), and Atlantic Mutual Insurance Company (insurer) appeal. Their sole contention is that the trial court erred in granting summary judgment because there were two material disputes of fact.

The record before the Commission shows that on 22 September 1973, the husband, then District Manager for the employer, and his wife were to attend a dinner party to honor two other employees. Only past and present employees and their spouses were invited to the party, which was to begin at 6 p.m. at the home of an employee, and was to be paid for by the employer. The husband was to present a watch to one of the honored employees. At approximately 5 p.m., while driving an automobile provided by the employer, in which the wife was present, the husband was injured in a car accident and died.

## I

The record shows that the wife testified before the Commission that at the time of the accident she and her

husband were on their way from their home to the party. They intended to stop first at a grocery store, which was located on their route, to purchase nonperishable groceries. They intended then to proceed to the party without returning home. They never reached the grocery store.

Mr. Persina, an insurance adjuster who investigated the accident at the request of the insurer,[1] testified that he interviewed the wife shortly after the accident. She told him that, because there was no food at home for their child and baby sitter on the evening of the accident, she and her husband were "going to return home with these groceries, drop them off at the house, then go to the party." He conceded that a statement handwritten by him and signed by the wife at the time of the interview, did not indicate that the Stewarts were going to return home with the groceries.[2]

Appellants first contend that there is a material factual dispute as to whether the Stewarts intended to return home with the groceries before going to the party. They assert that, if the Stewarts intended to return home from the grocery store before going to the party, at the time of the accident the Stewarts would have been on a self-contained trip undertaken for personal purposes, independent of and having no relation to the employer's party. They conclude that under such circumstances the husband's injuries would not be compensable because they would not have been sustained in the course of his employment.

Appellees contend that it is immaterial whether the Stewarts intended to return home with the groceries before going to the party. They maintain that obtaining food for the baby sitter was in furtherance of the business purpose of the employer. They conclude that, under these circumstances, even if the Stewarts at the time of the accident were on a

---

1. Mr. Persina was then employed by Crawford and Company, insurance adjusters. The insurer here had asked him to investigate this accident in order to determine liability with respect to a third party claim.

2. He explained his failure to include this information as follows:

"Well, when I saw her, she was pretty well banged up. Her leg was in a cast. I felt sorry for Mrs. Stewart because she just lost her husband. I didn't want to pressure her with a lot of questions and I just didn't put it down, or didn't follow through that line of questioning. That's why I didn't put it down."

self-contained trip to obtain food for the baby sitter, the husband's injuries would have been compensable because they would have been sustained in the course of his employment.

Under the Workmen's Compensation Act, an injury is compensable if it arises out of and in the course of employment.[3] Generally, an injury arises in the course of employment when it occurs within the period of employment at a place where the employee may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto.[4] Employment includes not only the actual physical labor but the whole period of time or sphere of activities.[5] Generally, an injury is not compensable if it occurs while an employee is going to or coming from work.[6] If an injury occurs, however, while an employee is traveling in order to perform a "special errand" or "special mission," it is compensable.[7] A special errand or special mission is a trip undertaken by the employee at the direction or request of an employer for the purpose of helping the employer's business.[8] Such special errands or missions may require a trip at a time other than the time the employee ordinarily goes to or comes from work and may require services outside the employee's regular duties. The essential characteristic of a special errand or mission is that it would not have been undertaken except for the obligation of employment.[9]

---

3. Md. Ann. Code, art. 101, § 15 (Cum. Supp. 1977).

4. Wiley Mfg. Co. v. Wilson, 280 Md. 200, 206, 373 A. 2d 613, 616 (1977); Watson v. Grimm, 200 Md. 461, 466, 90 A. 2d 180, 183 (1952); Pappas v. Modern Mfg. Co., 14 Md. App. 529, 532, 287 A. 2d 798, 800 (1972).

5. Sica v. Retail Credit Co., 245 Md. 606, 612, 227 A. 2d 33, 36 (1967); Watson v. Grimm, 200 Md. 461, 466, 90 A. 2d 180, 183 (1952).

6. Wiley Mfg. Co. v. Wilson, 280 Md. 200, 206, 373 A. 2d 613, 616 (1977); Pariser Bakery v. Koontz, 239 Md. 586, 590, 212 A. 2d 324, 326 (1965); Ryan v. Kasaskeris, 38 Md. App. 317, 319, 381 A. 2d 294, 295 (1977).

7. Director of Finance for City of Baltimore v. Alford, 270 Md. 355, 360-62, 311 A. 2d 412, 415-16 (1973); Reisinger-Siehler Co. v. Perry, 165 Md. 191, 198-99, 167 A. 51, 53-54 (1933); see Maryland Paper Products Co. v. Judson, 215 Md. 577, 591, 139 A. 2d 219, 226 (1958).

8. Reisinger-Siehler Co. v. Perry, 165 Md. 191, 198-99, 167 A. 51, 53-54 (1933); see 1 Larson, *Workmen's Compensation Law*, § 16.10 (1972).

9. Reisinger-Siehler Co. v. Perry, 165 Md. 191, 198-99, 167 A. 51, 53-54 (1933); see Director of Finance for City of Baltimore v. Alford, 270 Md. 355, 364, 311 A. 2d 412, 417 (1973).

The novel question to be decided here is whether an employee's self-contained trip to a grocery store, to obtain food for a baby sitter needed to enable him to attend a company-sponsored social event, is a special errand or mission. The Court of Appeals has held that certain company-sponsored social events are sufficiently work related to be incidents of employment, so that injuries which occur during such events are compensable.[10] Neither the Court of Appeals nor this Court has decided the question of whether an employee's trip to such a function constitutes a special errand or mission.

Courts in other jurisdictions which have considered the latter question have held such trips to be special errands or missions if the event itself was sufficiently work related to be an incident of employment.[11] Thus, if an injury which occurred during the event itself would have been compensable, an injury which occurred during the trip to or from the event would be compensable under the special errand or special mission exception.[12]

At least two jurisdictions have considered the additional question of whether an employee's self-contained trip, distinct from a trip to or from a work-related social event, is an incident of employment and thus a special errand or mission. In *Shell Oil Company v. Industrial Accident Commission,*[13] an employee, employed as a service station manager, was driving to a company-sponsored dinner meeting in another town when his car became disabled. He left the car at a gas station and continued to and returned home from the dinner meeting using other transportation.

---

10. Sica v. Retail Credit Co., 245 Md. 606, 618-19, 227 A. 2d 33, 39-40 (1967); see Selected Risks Ins. Co. v. Willis, 266 Md. 674, 677-78, 296 A. 2d 424, 425 (1972).

11. 1 Larson, *Workmen's Compensation Law,* § 22.23 at 5-84 to 5-85 (1972).

12. *See e.g.,* Lawrence v. Indus. Comm'n of Ariz., 281 P. 2d 113, 115-16 (Ariz. 1955); Stakonis v. United Advertising Co., 148 A. 334, 335-36 (Conn. 1930); Lybrand, Ross Bros. & Montgomery v. Indus. Comm'n, 223 N.E.2d 150, 154 (Ill. 1967); Caron's Case, 221 N.E.2d 871, 874 (Mass. 1966); Ricciardi v. Damar Products Co., 211 A. 2d 347, 350-51 (N.J. 1965); Kelly v. Hackensack Water Co., 92 A. 2d 506, 507-08 (N.J. Super. 1952); Dorman v. New Process Gear Division, Chrysler Corp., 353 N.Y.S.2d 264, 266-67 (App. Div. 1974); Hill v. McFarland-Johnson Engineers, 269 N.Y.S.2d 217, 218 (App. Div. 1966); Miller v. Keystone Appliances, Inc., 2 A. 2d 508, 509-11 (Pa. Super. Ct. 1938).

13. 18 Cal. Rptr. 540 (Ct. App. 1962).

Two days later, the employee was killed while attempting to tow the disabled vehicle to his service station. The California District Court of Appeal held the injury to be compensable. Recognizing that the employee's self-contained trip to retrieve his disabled vehicle was an integral component of his attendance at the dinner meeting, that Court said: [14]

"The car broke down while Byrd was acting within the scope of his employment, a result which should have been anticipated by the employer. That he would return to get his vehicle and not simply abandon it, should likewise have been anticipated by his employer. Thus, by reason of the fortuitous circumstances which developed, Byrd had to return to get his vehicle and he was still performing a service which was directly connected to the original errand. Byrd's death while enroute from Stockton to Merced occurred in the course of his employment."

The specific question of whether an employee's self-contained trip undertaken to secure the services of a baby sitter needed to enable him to attend a work-related social event was itself an incident of employment and therefore a special errand or mission was considered in *Harrison v. Stanton*.[15] There an employee was injured while driving a baby sitter to her home after attending a work-related party. The Superior Court of New Jersey held the injury to be compensable, stating: [16]

"Here the employer had previous knowledge that some of the social entertainments of the club were arranged for the members and their wives; he knew that the petitioner and his wife had an infant child too young to be left at home unattended; he was aware of the necessity in such instances of engaging the services of a baby sitter, for whose attendance he paid, and that the sitter resided elsewhere in the community. He had reason to anticipate that the

---

14. 18 Cal. Rptr. 540 at 542.
15. 97 A. 2d 687 (N.J. Super. 1953).
16. 97 A. 2d 687 at 690.

petitioner and his wife would not return home from such evening functions until some late hour in the night. The employer entrusted his motor vehicle to the petitioner for his use on such occasions. It had been the custom of the petitioner to transport the sitter to and from her home whenever she was so engaged. And so the presence of the baby sitter at the petitioner's home appears to have been one of the conditions under which the petitioner was expected to execute the intent and purpose of his employer.

"We would surmise that some provision for the return of the sitter to her home when her services terminated at midnight or thereabouts would not only be reasonably necessary but perhaps exacted. Assuredly in this instance the transportation of the baby sitter was predominantly in furtherance of the petitioner's attendance at the party.

* * *

"In the light of the evidence we are led to the opinion that the reasonably appropriate activities of the petitioner in obtaining the presence of the baby sitter at his home was intrinsically a component of the mission of attending the ball which the petitioner was expected, if not directed, by his employer to fulfill and that but for the consummation of that mission the petitioner would not have encountered the accident and its injurious consequences.

"In the peculiar circumstances of the case we conclude that the accident arose out of and in the course of the petitioner's employment. . . ."

In applying these principles to the instant case, we follow the rules of statutory construction which establish that the Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes, and that any uncertainty in the law should be resolved in favor of the

claimant.[17] The record establishes, and the parties do not contend to the contrary, that the company-sponsored dinner party was sufficiently work related to be an incident of employment. Accordingly, a trip to or from that social event would have been a special errand or mission. The record further shows that because spouses were expected to accompany employees to the party, which was scheduled for 6 p.m., the services of baby sitters were necessary to enable those employees who had children to attend. While the facts here are less compelling than those in *Harrison,* they are sufficient to show that the presence of the baby sitter was an integral component of the husband's attendance at the party, so that a self-contained trip to obtain a baby sitter would also be a special errand or mission.

In our view, the task of obtaining food for a baby sitter is a reasonable and necessary incident to obtaining a baby sitter's services. Because that task would not have been undertaken except for the obligation of employment, it, like the task of transporting the baby sitter, is an integral component of an employee's attendance at a work-related social event. Accordingly, we hold that an employee's self-contained trip to obtain food for a baby sitter needed to enable him to attend a work-related social event is a special errand or mission. Therefore, an employee's injury sustained during such a trip is one sustained in the course of his employment and is compensable.

Under the present circumstances, it is immaterial whether the Stewarts intended to return home with the groceries before proceeding to the party. The existence of an immaterial factual dispute does not prevent the entry of summary judgment.[18] The trial court did not err.

---

17. Wiley Mfg. Co. v. Wilson, 280 Md. 200, 217, 373 A. 2d 613, 622 (1977); Bethlehem-Fairfield Shipyard, Inc. v. Rosenthal, 185 Md. 416, 425, 45 A. 2d 79, 83 (1945); Stonesifer v. State, 34 Md. App. 519, 524, 368 A. 2d 492, 496 (1977); Keene v. Insley, 26 Md. App. 1, 11-12, 337 A. 2d 168, 174 (1975); Md. Ann. Code, art. 101, § 63 (1964 Repl.Vol.).

18. Lynx, Inc. v. Ordnance Products, Inc., 273 Md. 1, 8, 327 A. 2d 502, 509 (1974); Salisbury Beauty Schools v. State Board of Cosmetologists, 268 Md. 32, 40-41, 300 A. 2d 367, 373-74 (1973); Rosenthal v. Al Packer Ford, Inc., 36 Md. App. 349, 358-59, 374 A. 2d 377, 382 (1977); Maryland Rule 610 d 1.

18

## II

The wife additionally testified before the Commission that at the time of the accident she and her husband were proceeding on the route he customarily took to reach I-695 (the Baltimore Beltway).[19] This involved going north for a short distance, then west to I-83 (the Baltimore-Harrisburg Expressway), then south on I-83 to I-695. She further stated that she would not have used the route her husband used to reach I-695. She said that she would have gone either west to York Road or east to Dulaney Valley Road and then south to I-695. Finally, she said that, by taking the route her husband chose, they "could stop at the store and still get on [I-83]." The employer placed a map into evidence which purported to show that the route taken by the husband was longer than either of the routes the wife would have taken, and that the grocery store was not located along either of the shorter routes.

Appellants contend that, if, as the wife testified, the Stewarts did not intend to purchase food for the baby sitter or to return home before going to the party, but rather intended to proceed to the party immediately after purchasing groceries for themselves, there would nevertheless be a material factual dispute. They maintain that the evidence supports an inference that the Stewarts were not on a direct route to the party at the time of the accident. They assert that, under such circumstances, the husband would not yet have been serving the employer's business purpose or would have substantially deviated from that business purpose to serve a personal purpose. They conclude that the husband's injuries would not be compensable because they would not have been sustained in the course of his employment.

Appellees maintain that there is no evidence to show or support a rational inference that the Stewarts were not on a direct route to the party. They conclude that, under these circumstances, the husband's injuries would be compensable because they would have been sustained in the course of his employment.

19. The record shows that, in order to reach the party, the Stewarts would have had to travel east on I-695.

There is nothing in the record, even when viewed in the light most favorable to appellants,[20] that supports an inference that the Stewarts were not on a direct route to the party at the time of the accident. The map indicates that the three routes to I-695 described by the wife differ only slightly in length, and that the husband's preferred route was not substantially longer in distance than those preferred by the wife. It additionally shows that the major portion of the route customarily used by the husband and used on the night of the accident was a limited-access highway. In contrast, the two routes customarily used by the wife consisted of a combination of residential streets and nonlimited-access major traffic arteries. Thus, the map not only shows that the husband's preferred route was not substantially longer in distance, but also supports an inference that it was shorter in time. Accordingly, the map does not support an inference that the Stewarts were not on a direct route to the party. The wife's testimony that she would have used a route different from that chosen by her husband, and that by using the route chosen by her husband they could "stop at the store and still get on the Expressway," also fails to support an inference that the Stewarts were not on a direct route, particularly in light of the wife's testimony that her husband customarily used the route he chose on the night of the accident.

In the absence of any evidence in the record to show that the Stewarts were not on a direct route to the party, there is no factual dispute. Accordingly, the trial court did not err.

> *Judgment affirmed.*
> *Case remanded to the Circuit Court for Baltimore County for remand to the Workmen's Compensation Commission for a determination of the nature and extent of dependency.*
> *Costs to be paid by appellants.*

---

**20.** Dietz v. Moore, 277 Md. 1, 4, 351 A. 2d 428, 431 (1976); Fenwick Motor Co. v. Fenwick, 258 Md. 134, 138, 265 A. 2d 256, 258 (1970); Woodward v. Newstein, 37 Md. App. 285, 289-90, 377 A. 2d 535, 538 (1977).