543 A.2d 889

**Douglas M. AUSTIN, et ux.**

v.

**THRIFTY DIVERSIFIED, INC., t/a Better Engineering.**

**No. 1600, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

July 13, 1988.

William E. Chamberlain, Baltimore, for appellants.

Gregory L. VanGeison (M. Bradley Hallwig and Anderson, Coe & King, on the brief), Baltimore, for appellee.

Argued before KARWACKI and ROBERT M. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ROBERT M. BELL, Judge.

Douglas and Shirley Austin (appellants), parents of John Douglas Austin, the decedent, appeal from the judgment of the Circuit Court for Baltimore County granting summary judgment in favor of Thrifty Diversified, Inc., t/a Better Engineering, appellee. Questioning only the propriety of the court's ruling on the summary judgment motion, they ask:

1. Did the lower court err in ruling that the affidavit produced by appellee is not in conflict with the facts produced by the pleadings and affidavits produced by the appellants?

2.  Did the decedent suffer an injury that arose out of, and in the course of, his employment as the phrase is defined by Article 101, § 21(b)(5) of the Annotated Code of Maryland?

We will affirm.

Appellants brought suit against appellee for the wrongful death of their son. Their complaint alleged that appellee negligently failed to maintain and repair equipment used by the deceased; that appellee failed properly to supervise and warn the deceased of the dangerous and defective condition of the equipment; and that appellee violated provisions of the Maryland Occupational Safety Act, Md.Code Ann., art. 89, §§ 28–49D. Appellee answered the complaint and engaged in discovery, which consisted of propounding interrogatories to appellants. After appellants had responded to the interrogatories, appellee moved for summary judgment on the ground that appellants' exclusive remedy was under the Maryland Workers' Compensation Act, Md.Code Ann., art. 101.[1] Appellants opposed the motion. Each side supported its position with affidavits. Following a hearing on the motion, the trial judge filed a Memorandum Opinion and Judgment, in which he concluded that the death of the deceased arose out of and in the course of employment. He thus granted appellee's summary judgment motion. This appeal followed.

We glean the facts necessary to the resolution of the issues presented on this appeal from the pleadings and affidavits filed by the parties and appellants' answers to interrogatories. *See* Md. Rule 2–501(e); *Brady v. Ralph Parsons Company*, 308 Md. 486, 495, 520 A.2d 717 (1987); *Schlossberg v. Epstein*, 73 Md.App. 415, 423, 534 A.2d 1003 (1988). Moreover, our concern upon review of a lower court's ruling on a motion for summary judgment being to

---

1.  Effective July 1, 1984, consistent with the modern trend toward gender neutral legislation, "all terminology referring to 'workmen's', or like terms, shall be revised as 'workers', or like terms." Article 101, § 14A(a).

determine whether there is a genuine dispute as to any material fact and whether the moving party is entitled to judgment as a matter of law, we view the facts in the light most favorable to the party against whom the motion is made and resolve all inferences against the moving party. *May Dept. Stores v. Harryman*, 65 Md.App. 534, 538, 501 A.2d 468 (1985), *aff'd*, 307 Md. 692, 517 A.2d 71 (1986); *Schlossberg*, 73 Md.App. at 423, 534 A.2d 1003. Only if our review reveals that there is no genuine dispute as to any material fact and that only one inference can be drawn from those facts will we affirm the lower court's grant of summary judgment. *Harryman, supra.*

John Douglas Austin, the deceased, was hired by appellee on May 14, 1984 as a certified welder. His hourly wage for that position was $4.50 per hour. He continued in that position until his death on July 23, 1984. Throughout the period of the deceased's employment, appellee carried Workers' Compensation insurance covering its employees, including the deceased.

On July 23, 1984, the deceased worked his regular shift, "punching out" at 4:00 p.m. Prior to punching out, however, the deceased sought, and received, permission to use one of appellee's arc welding machines to repair the exhaust system on a friend's automobile. The work was to be done on appellee's premises after the deceased's shift had ended. Shortly after the end of the deceased's shift, while still on appellee's premises working on his friend's exhaust system, using appellee's welding equipment, the deceased was electrocuted.

In addition to the foregoing, an affidavit filed on behalf of appellants and based upon the investigation of their attorney asserted "that the decedent had:

(a) Completed his employment obligations to the employer at approximately 4:00 P.M. on the day of his death.

\*     \*     \*     \*     \*     \*

(d) That the employer [did not receive], and was not intended to receive any benefit from the personal project

on which the decedent was working at the time of his death.

(e) That but for the dangerous and defective equipment loaned the decedent by the Defendant, the decedent's death would not have occurred."

These allegations were presumably in response to assertions in affidavits filed by appellee to the effect that "an employer/employee relationship existed between the decedent and the defendant on July 23, 1984, the date of decedent's death ..." and that "[t]he employer customarily permitted employees, who ask permission, to use its welding equipment for personal projects." These assertions are not, however, as the lower court ruled, in conflict and, therefore, do not give rise to a genuine dispute of material fact or to conflicting inferences to be drawn from the facts.[2]

Thus, it is undisputed that the deceased was, on the date of his death, employed as a welder by appellee; that when he died, the deceased had completed his work day for

---

2. We reject appellants' argument that a genuine dispute of material fact was presented by the affidavits. Their position proceeds upon a narrow reading of Maryland Code Ann., art. 101 § 21(b)(5) (1985 Repl.Vol.), which provides:

> (b) *Coverage of employees.*—The following shall constitute employees subject to the provisions of this act, except as exempted under subsection (c) of this section:
>
> \*    \*    \*    \*    \*    \*
>
> (5) Every person performing services for remuneration in the course of the trade, business, profession or occupation of an employer *at the time of the injury*, provided such person in relation to this service does not maintain a separate business, does not hold himself out to and render service to the public and not himself an employer subject to this act. (emphasis added)

They also rely upon the undisputed fact that, when the deceased died, he had completed his work shift and "punched out." Essential to appellants' position is a literal reading of the emphasized language in § 21(b)(5). As will become apparent hereinafter, the cases which specifically address the issue of when an accidental injury "arises out of and in the course of employment," pursuant to Maryland Code Ann., art. 101 § 15, simply do not support a narrow reading of § 21(b)(5). The only difference between the version of § 21(b)(5) in the 1985 Repl.Vol. and in the 1987 Cummulative Supplement is that, in the latter, the word "act" is replaced by the word "article".

appellee and, with appellee's permission, was using appellee's equipment to work on a personal project on appellee's premises; and that he was electrocuted while working on the personal project. The only issue disputed is whether the decedent's death resulted from an injury "arising out of and in the course of" his employment. That issue is one of law and, as such, is to be resolved by the court. *Knoche v. Cox*, 282 Md. 447, 457, 385 A.2d 1179 (1978).

Maryland Code Ann., art. 101 § 15 provides, in pertinent part, that:

> Every employer subject to the provisions of this article, shall pay or provide ... compensation ... for the disability or death of his employee resulting from an accidental personal injury sustained by the employee *arising out of and in the course of his employment* without regard to fault as a cause of such injury.... (Emphasis added)

Moreover, "except that if an employer fails to secure the payment of compensation for his injured employees and their dependents as provided in this article," *id.*, "the operation of the law is exclusive of all other remedy and liability, as to both employer and employee who come within the purview of the Act, with respect to all injury arising out of and in the course of the employment." *Knoche*, 282 Md. at 453, 385 A.2d 1179. *See American Radiator & Standard Sanitary Corp. v. Mark Engineering Company*, 230 Md. 584, 590, 187 A.2d 864 (1963). *See also Victory Sparkler Co. v. Francks*, 147 Md. 368, 376-77, 128 A. 635 (1925), in which the Court of Appeals, in making the same point, stated:

> In other words, the statute has given to labor what it never had before, and has taken from capital what it had always enjoyed, and has compensated the latter by limiting its liability, while engaged in hazardous employment, and conforming to the act, to the payment of compensation only to those who sustain an injury, arising out of and in course of their employment, that is compensable under the act.

As a consequence, it being undisputed that appellee maintained workers' compensation insurance covering the deceased, unless the personal injury did not arise out of or in the course of employment, appellants may not maintain this wrongful death action.

Appellants assert that the trial court erroneously granted summary judgment inasmuch as the facts disclosed that the deceased's death was not the result of an injury arising out of and in the course of employment. To reach this conclusion, they interpret § 21(b)(5) literally to require that the deceased be engaged in the employment for which he was hired at the very moment of death. *See* note 1, *supra.* Since, they continue, the deceased had punched out some one and a half hours before his death, notwithstanding that he remained on the employer's premises, used, with the employer's permission, the employer's equipment, and the employer gained no benefit from the work that the deceased was performing, his death did not arise out of or in the course of employment. Consequently, they conclude, at the very least, the facts were conflicting and summary judgment should have been denied. We do not agree.

"The words 'out of' and 'in the course of' employment as used is the [Workers'] Compensation Act are not synonymous, and both must be satisfied by the claimant to bring his case within the operation of the Act." *Pariser Bakery v. Koontz,* 239 Md. 586, 590, 212 A.2d 324 (1965).[3] "Out of employment" refers to the cause or origin of the accident and "in the course of employment" relates to the

---

**3.** *But see King Waterproofing Co. v. Slovsky,* 71 Md.App. 247, 252 n. 4, 524 A.2d 1245 (1987), in which we stated:

Although the requirements that an injury arise "out of" and "in the course of" employment have been regarded as separate requirements, the distinction should not be over-emphasized. As stated in 1A A. Larson, *Workmen's Compensation Law,* § 29.00 (1985):

In practice, the "course of employment" and "arising out of employment" tests are not, and should not be, applied entirely independently; they are both parts of a single test of work-connection, and therefore deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other.

time, place, and circumstances under which it occurred. *Slovsky,* 71 Md.App. at 251, 524 A.2d 1245.

■ When the issue is whether an injury arises out of employment, the relevant inquiry is the causal connection between the injury and the employment. *Knoche,* 282 Md. at 455, 385 A.2d 1179. If the injury "results from some obligation, condition or incident of the employment, under the circumstances of the particular case," *Department of Correction v. Harris,* 232 Md. 180, 184, 192 A.2d 479 (1963), it arises out of employment. The courts of this State have given the words "arising out of" a liberal construction. *Knoche,* 282 Md. at 456, 385 A.2d 1179; *National Indemnity Co. v. Ewing,* 235 Md. 145, 149, 200 A.2d 680 (1964).

■ Whether the injury occurred in the "course of employment" involves an analysis of whether the activity out of which the injury arose had a purpose related to the employment. *Wiley Manufacturing Co. v. Wilson,* 280 Md. 200, 206, 373 A.2d 613 (1977). Thus, "an injury arises 'in the course of employment' when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto." *Watson v. Grimm,* 200 Md. 461, 466, 90 A.2d 180 (1952).

When faced with the issue of whether a particular injury arose out of or in the course of employment, the courts of this State have "endeavored to keep in mind both the legislative mandate that the Work[ers'] Compensation Act shall be so interpreted and construed as to effectuate its general social purpose and the concomitant consideration that work[ers'], like other members of the general public, are not insured against the common perils of life," *Tavel v. Bechtel Corp.,* 242 Md. 299, 303, 219 A.2d 43 (1966); *see also Wiley Manufacturing Co. v. Wilson,* 280 Md. at 217, 373 A.2d 613; *Coats and Clark's Sales Corp. v. Stewart,* 39 Md.App. 10, 16, 383 A.2d 67 (1978), as well as to keep abreast of the expanding scope of the employer-employee

relationship. *See Knoche,* 282 Md. at 455, 385 A.2d 1179. In so doing, they have allowed recovery for injuries which have been sustained, off premises, before the work day began, *Harryman,* 65 Md.App. at 546, 501 A.2d 468, during coffee breaks, *Slovsky,* after formal working hours, *Watson, Coats and Clark's Sales Corp. v. Stewart,* and on weekends during recreational activities. *Sica v. Retail Credit Corp.,* 245 Md. 606, 227 A.2d 33 (1967).

There are no Maryland cases which directly address the issue before us. Nevertheless, the principles that have been enunciated in the cases involving off premises injuries in the context of social events, recreational activities, and coffee breaks are instructive. In addition, we believe that several out-of-state cases are persuasive. *See Nemeth v. Michigan Building Components,* 390 Mich. 734, 213 N.W.2d 144 (1973); *Edwards v. Superior Coach Sales, Inc.,* 417 So.2d 1289 (La.App.), *writ denied,* 422 So.2d 423 (La. 1982); *Maheux v. Cove–Craft, Inc.,* 103 N.H. 71, 164 A.2d 574 (1960); *J. & G. Cabinets v. Hennington,* 269 Ark. 789, 600 S.W.2d 916 (App.1980).

We start with the determination whether the injury arose out of the deceased's employment. In *Watson v. Grimm,* the decedent fell from the sideboard of his employer's garbage truck while enroute to Hagerstown after having completed his garbage collecting duties for the day. Although the employer usually drove the decedent to the farm where the decedent lived, on this particular day, the decedent told his employer that he wanted to be dropped off in downtown Hagerstown. The Court of Appeals reversed a lower court's determination that the decedent's accidental injury did not arise out of his employment. In so doing, it found a causal connection between the injury and the employment both because "his employer allowed him to ride on the truck, and especially as there was some hazard in riding on the running board." 200 Md. at 465, 90 A.2d 180. The Court went on to opine that:

> An employee's fall need not be caused by an accident in order that his death resulting from the fall may be

compensable under the Workmen's Compensation Act, but *it is sufficient if the death is brought about by a hazard of the employment and would not have ensued if it had not been for the employment....* Where an employee's injury resulting from a fall is contributed to by some factor peculiar to the employment, it arises out of the employment within the meaning of the Act, although the fall has its origin solely in some idiopathy of the employee. (emphasis added)

200 Md. at 465–66, 90 A.2d 180. In the instant case, the deceased's death "would not have ensued if it had not been for the employment"; it was only because the deceased was an employee of appellee that he was permitted to use appellee's equipment, on appellee's premises, for a personal project. Moreover, the instrumentality of the death, the place where it happened, and the activity giving rise to it were the same as those he encountered in his employment; hence, it may be said that the death was brought about by the hazard of the employment. Under these circumstances, it may not be seriously contended that the death did not arise out of the deceased's employment.

Whether the death arose in the course of employment, requiring, as it does, an analysis of the extent to which the activity out of which death arose is sufficiently work related as to be an incident of employment, is more complex and more difficult to resolve. Nevertheless, those cases involving deaths or injuries in connection with social events sponsored by an employer are instructive. In *Sica v. Retail Credit Co., supra,* the Circuit Court for Baltimore City found that an employee's injuries sustained at an employer sponsored picnic, away from the business premises, were not compensable under the Workers' Compensation Act. The Court of Appeals reversed. Concluding that the injury was compensable, the Court acknowledged that " 'employment' as used in the Workmen's Compensation Act, includes not only the actual physical labor but the whole period of time or sphere of activities." 245 Md. at 612, 227 A.2d 33, quoting *Watson v. Grimm,* 200 Md. at 466, 90 A.2d 180. It

also applied factors considered, by 1 Larson, *Workmen's Compensation,* § 22.00, and cases from other jurisdictions, *e.g., Moore's Case,* 330 Mass. 1, 110 N.E.2d 764 (1953); *Ricciardi v. Damar Products Co.,* 45 N.J. 54, 211 A.2d 347 (1965), to be relevant to a determination whether a specific recreational event was sufficiently work connected to be considered an incident of employment. Included among those factors was whether the employer expects or receives substantial benefit from his employees' participation in the event. That the Court considered that factor to be significant is indicated by its holding: "On the undisputed evidence, taken as a whole, we find that the employer derived substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale common to all kinds of recreation and social life." 245 Md. at 618, 227 A.2d 33. With regard to this factor, the Court found the New Jersey court's analysis on similar facts, both "cogent and apposite":

> We think it clear the picnic was sponsored by the employer in part at least to further its own interests. That the employees were free to attend or to stay away is not a critical fact. Nor is it decisive that wages were not paid those who did appear, ... or that the picnic was held at a place other than the work premises. Rather the question is whether the event is sufficiently work-connected to bring employees within coverage of the compensation law, a law which provides protection for employees, not because of fault or failure of the employer, but rather upon the belief that the enterprise itself should absorb losses which inevitably and predictably are an incident of its operation.
>
> Where, as here, the employer sponsors a recreational event for the purpose of maintaining or improving relations with and among employees, the employees gratify the employer's wish by attending and thus serve the employer's business aim. It therefore is correct to say the Legislature intended the enterprise to bear the risk of injuries incidental to that company event. Hence the picnic itself was a covered affair. (Citations omitted)

245 Md. at 617, 227 A.2d 33, quoting *Ricciardi,* 211 A.2d at 349.

We applied a similar analysis in *Coats and Clark's Sales v. Stewart, supra,* a case in which the issue presented was "whether an employee's self-contained trip to a grocery store, to obtain food for a babysitter needed to enable him to attend a company-sponsored social event, is a special errand or mission." 39 Md.App. at 14, 383 A.2d 67. Pointing out that "[t]he essential characteristic of a special errand or mission is that it would not have been undertaken except for the obligation of employment," 39 Md.App. at 13, 383 A.2d 67, and that the Workers' Compensation Act is to be construed liberally in favor of injured employees in order to effectuate its purposes, we held that the trip to the grocery store was within the Act as a special errand or mission. In that case, it was not contended that the social event was not sufficiently work related as to be an incident of employment and so we had no difficulty in concluding that "a trip to or from that social event would have been a special errand or mission." 39 Md.App. at 17, 383 A.2d 67. We reasoned:

> In our view, the task of obtaining food for a baby sitter is a reasonable and necessary incident to obtaining a baby sitter's services. Because that task would not have been undertaken except for the obligation of employment, it, like the task of transporting the baby sitter, is an integrable component of an employees' attendance at a work-related social event. Accordingly, we hold that an employee's self-contained trip to obtain food for a baby sitter needed to enable him to attend a work-related social event is a special errand or mission. Therefore, an employee's injury sustained during such a trip is one sustained in the course of his employment and is compensable.

*Id.*

In the instant case, we are not concerned with an employer sponsored social or recreational activity; rather, we are concerned with an employer's policy of allowing employees to work on personal projects on its premises, using its tools,

after the work day has ended. Nevertheless, the *Sica/Coats and Clark's Sales'* analysis, to the extent that it focuses on the benefit expected by, or accruing to, the employer, is equally applicable to the case *sub judice.* The benefit expected by, or accruing to, the employer as a result of allowing personal projects to be done using its equipment and on its premises is no different than that flowing to the employer as a result of its sponsorship of recreational or social events.

*King Waterproofing Co. v. Slovsky, supra,* is but another application of the employer benefit analysis.

At issue in *Slovsky* was whether an injury sustained by an employee when he was struck by an automobile while crossing a public highway during a "mid-shift break" in his employment resulted from an accidental injury "arising out of and in the course of his employment." 71 Md.App. at 248–49, 524 A.2d 1245. We held that it was. We were persuaded by *dicta* in *Sica* that "[t]he modern institution of the 'coffee break' benefits the employer, in maintaining the employees' morale, as well as the participating employees" and by cases holding that an accident sustained during an on premises coffee break arises out of employment. We also relied on *Mack Trucks, Inc. v. Miller,* 23 Md.App. 271, 326 A.2d 186 (1974), *aff'd,* 275 Md. 192, 338 A.2d 71 (1975), which held that an injury sustained while playing touch football on the employer's premises during a coffee break was compensable. We explained

> [T]he appellee and his fellow telephone solicitors received a paid 20–minute break under the terms of their employment. The break was intended to benefit both King, the employer, and its employees inasmuch as the opportunity to take a brief respite would ostensibly renew the employees' vigor and, of particular importance in the case of telephone solicitors, their voices. Employees generally use the break to attend to their personal comfort, which included the consumption of food and drink. The employer accepted and encouraged this activity by providing on the premises a coffee machine, a refrigerator, and tables

for employees to partake of refreshments. Within the confines of the employer's premises, then, the employees were entitled to a break as an incident of their employment. The only question is whether the appellee somehow departed from the course of his employment by leaving King's premises during his break on December 19, 1984.

We conclude that the appellee did not leave the course of his employment. At issue is whether the appellee's accidental injury occurred at a place where the appellee reasonably could have been in attending to his personal comfort during his paid break. Under the circumstances of this case, we think it was reasonable for the appellee, at the time of his accidental injury, to be going to a carry-out restaurant across the street from his employer's premises. The appellants did not contend that the employer prohibited employees from leaving the premises during their breaks. Moreover, the appellants conceded that the appellee and King's other employees customarily went out to obtain food and drink during those breaks. Even the appellee's supervisor had asked the appellee on prior occasions to pick up refreshments. Thus, it is apparent that the employer, while perhaps not encouraging its employees to leave the premises, at least acquiesced in the practice.

71 Md.App. at 254–55, 524 A.2d 1245. Our analysis placed heavy emphasis on the benefits to be derived from the coffee break by the employer.

The *Slovsky* analysis is equally applicable to the case *sub judice*. Here, the employer customarily permitted its certified welder employees to use its welding equipment to work on personal projects, provided that they requested permission to do so. Only employees were permitted to use the equipment. We agree with the trial judge's conclusion that "[w]henever an employer grants an employee permission to work on a private project, their relationship generally improves by promoting positive employee morale. Thus, as in the cases where compensation was allowed for injuries

sustained in recreational activities, . . . a direct, albeit intangible, benefit accrue[s] to employer. . . ." We hold, therefore, that appellant's death arose out of and in the course of employment. It follows that appellant's exclusive remedy is under the Workers' Compensation Act.

The result we reach is consistent with that reached by courts in other jurisdictions which have considered this question. In *Edwards v. Superior Coach Sales, Inc., supra,* the employee was on the employer's premises one Saturday morning in the performance of his employment duties. When those duties were completed, he asked for and received permission from his employer to use the employer's welding equipment to work on a personal project. While working on that project, he was injured when the equipment he was using caused an explosion. The court determined that the employee's sole remedy was under a Workers' Compensation Act. Although one of the basis for the ruling was that "[a]n employee remains in the scope and course of his employment for a reasonable time after his work terminates or while he is attending to a personal matter that is reasonably employment connected," the court also pointed out that "[a]llowing the employee to use the employer's equipment on the work premises for a personal need immediately after work terminated was reasonably related to the employment because it fostered a good employer-employee relationship." 417 So.2d at 1292.

Similarly in *Nemeth v. Michigan Building Components,* the employee was injured on the employer's premises, while using the employer's equipment, with the employer's permission, to work on a personal project after his work day had concluded. The Court held that the injury arose out of and in the course of employment, reasoning:

> But for the employment relationship, Nemeth probably would not have been importuned by the fellow employee to use the saw and, but for the employment relationship, he would not have been allowed to use either the employer's saw or his premises for this purpose.

*  *  *  *  *  *

Employers expend large sums in efforts to establish employee goodwill. Christmas parties and other social affairs are sponsored to further this goal. No tangible products are produced at such affairs. Yet their cost is recognized as a cost of doing business. Injuries suffered by a workman attending social affairs have been held to arise out of and in the course of employment. Allowing Nemeth to use the machine after hours similarly served to promote and maintain good employer-employee relationships. (footnote omitted)

213 N.W.2d at 145–46. *See also J. & G. Cabinets v. Hennington*, 269 Ark. 789, 600 S.W.2d 916, 918 (App.1980) (injury sustained by an employee while working on a personal project on the employer's premises during his lunch hour is compensable under the Workers' Compensation Act because it was sustained while engaged in an activity which the employer encouraged.); *Maheux v. Cove–Craft, Inc.*, 103 N.H. 71, 164 A.2d 574 (1960) (injury sustained by an employee during his lunch hour while working on a personal project is compensable.).

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.