616 A.2d 451

Roby HUFFMAN

v.

**KOPPERS COMPANY INC., et al.**

**No. 163, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Dec. 2, 1992.

R. Roger Drechsler, argued (Norman Hochberg, on the brief), Baltimore, for appellant.

Stan M. Haynes, argued (Semmes, Bowen & Semmes, on the brief), Baltimore, for appellees.

Argued before FISCHER, DAVIS and HARRELL, JJ.

HARRELL, Judge.

This appeal stems from the finding of the Workers' Compensation Commission that the heart attack sustained by Roby Huffman after being deposed by his former employer, Koppers Company, Inc., in connection with his claim regarding an earlier compensable injury, was not causally related to that earlier injury and, therefore, was not compensable. Mr. Huffman noted an appeal from that decision to the Circuit Court for Baltimore City (Noel, J.), which granted Koppers Company's subsequent motion for summary judgment. Mr. Huffman now seeks relief from this Court. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On 20 September 1978, Roby Huffman (the Claimant) injured his right knee while working as a welder for Koppers Company, Inc. (the Employer). He received from the Workers' Compensation Commission (Commission) a temporary total disability award and, in 1981, a permanent partial disability award for a 25% loss of use of his right leg. The Claimant re-opened his case in 1985, alleging that the condition of his right leg had worsened and that he had developed problems with his left leg that were causally related to

the original injury. On 20 November 1985, the Commission found that the Claimant's right leg had worsened and that the condition of his left leg was causally related to his accident, and awarded him a permanent partial disability compensation for a 55% industrial loss of use of his body. Aggrieved, the Employer appealed the decision to the Circuit Court for Baltimore City.

During the course of discovery in the appeal, the Employer deposed the Claimant in the early afternoon of 20 September 1988. Approximately twelve hours later, the Claimant was awakened by chest pains. Shortly thereafter, he was admitted to St. Agnes Hospital, where he was diagnosed as having had a heart attack.

Subsequently, the Employer's appeal was dismissed, although the reason for this is not apparent from the record. In 1990, the Claimant petitioned to re-open his claim under the 1978 injury, alleging that his heart condition was covered under the claim. On 17 April 1991, the Commission granted the Claimant's petition to re-open, but found that the heart attack was not causally related to the accidental injury of 20 September 1978 and denied him benefits.

The Claimant then appealed to the Circuit Court for Baltimore City. After the Employer moved for summary judgment, the Claimant filed his own motion for partial summary judgment. Following a hearing, the circuit court granted the Employer's motion for summary judgment on 24 October 1991.

On appeal, the Subsequent Injury Fund elected not to participate as its interests were deemed coincident with the Employer's interests.

## DISCUSSION

In this case of first impression, we are asked to decide whether a heart attack, suffered by an employee after he testified at a deposition in connection with a claim regarding an earlier compensable injury, is itself a compensable event that arises out of and in the course of employment when the

heart attack is medically unrelated to the earlier injury. The Claimant has presented us with several reasons why we should resolve this issue in his favor. We are not persuaded by any of these arguments, however, and therefore affirm the trial court's grant of summary judgment. We explain.

■ The standard for appellate review of a trial court's grant of a motion for summary judgment is whether the court was legally correct. *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990). Summary judgment is appropriate only where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Md.Rule 2–501; *Brady v. Ralph Parsons Co.*, 308 Md. 486, 495, 520 A.2d 717 (1987). In determining whether a factual dispute exists, all inferences should be drawn in the light most favorable to the non-moving party. *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). In the instant case, no material fact is in dispute and the question of whether the injury here is compensable is purely a matter of law.[1]

We begin by determining whether the Claimant's injury satisfies the statutory prerequisites of compensability. The Workers' Compensation Act (the Act), which is set forth in Title 9 of the Labor and Employment Article of the Maryland Code, is designed to provide workers with compensation for loss of earning capacity that results from accidental injury arising out of and in the course of employment. *Queen v. Agger*, 287 Md. 342, 343, 412 A.2d 733 (1980). The Act "is to be construed as liberally in favor of injured employees as the Act's provisions will permit so as to effectuate its benevolent purpose as remedial social legislation." *Lovellette v. Mayor & City Council of Baltimore*, 297 Md. 271, 282, 465 A.2d 1141 (1983). But this does not

---

1. From our review of the record, the only fact that apparently is in dispute is whether the stress of appearing and testifying at his deposition contributed to the Claimant's heart attack. As explained *infra*, this dispute does not affect our holding, and therefore is immaterial.

mean that the Act should be extended to cover situations not encompassed by its purpose or authorized by its provisions. *Subsequent Injury Fund v. Thomas*, 275 Md. 628, 635, 342 A.2d 671 (1975); *Ewing v. Koppers Co.*, 69 Md. App. 722, 731, 519 A.2d 790 (1987).

■■■ With these principles in mind, Maryland courts have molded the contours of the two prerequisites of compensability—that the injury arise *out of* and *in the course of* employment—to bring myriad factual situations within the Act's coverage. The first requirement, that the injury arise "out of" employment, refers to the cause or origin of the accident. *Knoche v. Cox*, 282 Md. 447, 455, 385 A.2d 1179 (1978); *Austin v. Thrifty Diversified, Inc.*, 76 Md.App. 150, 157, 543 A.2d 889 (1988). There must be a "causal connection between the conditions under which the work is required to be performed and the ensuing injury." *Pariser Bakery v. Koontz*, 239 Md. 586, 589, 212 A.2d 324 (1965). The second requirement, that the injury arise "in the course of" employment, refers to the time, place, and circumstances under which the injury occurred and asks whether the injury happened while the employee was performing the duty for which he was employed. *Watson v. Grimm*, 200 Md. 461, 466, 90 A.2d 180 (1952). Thus, an injury arises in the course of employment "when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto." *Id.* Whether a particular injury arose out of and in the course of employment depends on the facts and circumstances of each individual case. *Koontz*, 239 Md. at 589, 212 A.2d 324.

■■■ Applying the foregoing principles to the facts of this case, we think that the Claimant's heart attack was not an injury that arose out of and in the course of his employment. His injury occurred outside the time and space limits of employment contemplated by the statutory requirements. First, the injury did not arise out of his employment. The

origin of the Claimant's heart attack was his deposition, not his employment as a welder for the Employer. Attending a deposition was not the Claimant's employment, and it was not a condition or obligation of his employment as a welder. Nor is it considered to be one of the usual hazards or obligations of being a welder.

■ Second, the injury did not arise in the course of employment. The heart attack did not occur while the Claimant was performing a duty that he was employed to do, because he was not employed to testify at depositions. In fact, the Claimant was not employed by the Employer in any capacity when he suffered his heart attack. His employment had been terminated approximately three years before the deposition. Because he was not the Employer's employee at the time of the injury, the injury simply could not have arisen out of and in the course of his employment. Section 9–202 of the Labor and Employment Article provides that a person is a covered employee "while in the service of an employer under an express or implied contract of apprenticeship or hire." To be entitled to compensation, a person must have been a covered employee at the time of the injury. *Lockerman v. Prince George's County*, 281 Md. 195, 201, 377 A.2d 1177 (1977) ("the normal contractual incidents of the employer-employee relationship are required to be present in order that any person be covered under ... the Act"); *Sun Cab Co. v. Powell*, 196 Md. 572, 579, 77 A.2d 783 (1951) ("it is essential that there should have existed at the time of the injury a contract of employment between the alleged employer and the injured workman").[2] Clearly, the heart attack did not occur "within the

---

2. In at least two decisions of other states, the absence of an employment relationship at the time of the second injury was an important factor in determining whether to deny the employee's claim for benefits. In each of these cases, the claimant was injured or killed in an automobile accident while going to or returning from a medical examination or treatment of an earlier compensable injury, and the claimant's employment had been terminated before the second injury occurred. *See, e.g., Bankers Inv. Co. v. Boyd*, 560 P.2d 958

[Claimant's] period of employment." *See Watson v. Grimm,* 200 Md. at 466, 90 A.2d 180. Consequently, it does not satisfy the "in the course of" requirement.

Although the Claimant has not satisfied the statutory requirements for compensability—that the injury arise out of and in the course of his employment—our analysis does not end, because there is authority to support the conclusion that an employee may recover for injuries sustained while engaged in an activity that is not within the precise time and space limits of employment.

■ The Claimant relies heavily on the Maryland decisions that have awarded benefits to an employee who was on a "special errand" when the injury occurred. *See, e.g., Coats & Clark's Sales Corp. v. Stewart,* 39 Md.App. 10, 383 A.2d 67 (1978). The special errand doctrine developed as an exception to the "coming and going" rule that denied compensation to employees who were injured when travelling to or from the workplace. *See id.* at 13, 383 A.2d 67; *Fairchild Space Co. v. Baroffio,* 77 Md.App. 494, 497, 551 A.2d 135 (1989). If an injury occurs while an employee is travelling to perform a "special errand" or "special mission," it is compensable. A special errand or mission is a trip taken by the employee at the direction of the employer for the purpose of helping the employer's business. *Baroffio,* 77 Md.App. at 501, 551 A.2d 135. "The essential characteristic of a special errand or mission is that it would not have been undertaken except for the obligation of employment." *Stewart,* 39 Md.App. at 13, 383 A.2d 67. Employees feel obligated to go on the special mission because of the apparent underlying implication that if they do not go, their employment may be jeopardized.

■ The special errand doctrine does not help the Claimant for two reasons. First, as stated earlier, the Claimant was not working for the Employer when he testified at his

(Okla.1977); *Skelgas Co. v. Indus. Comm'n,* 400 Ill. 322, 79 N.E.2d 501 (1948).

deposition. Thus, the mission, i.e. attending the deposition, was not undertaken because of any obligation of the employment relationship. Instead, the obligation to attend and testify arose from the Maryland Rules of Procedure, which authorize dismissal, entry of a default judgment, or sanctions against a party who fails to appear for his deposition after proper notice. *See* Md.Rules 2–432 and 2–433. Even though the Employer "requested" the Claimant's deposition by timely serving a notice of deposition, the Claimant's attendance actually was compelled by the Maryland Rules and not by any possibility that his failure to attend would jeopardize his employment relationship.

In addition, the Claimant's attending and testifying at the deposition did not serve the purpose of helping the Employer's business. It is possible, of course, that the Claimant's testimony would have helped the Employer win its appeal to the circuit court, if the case had not been dismissed. But the Employer is not in the business of defending or attacking compensation claims; it is in the business of producing and selling industrial machinery and equipment.

The Claimant also relies heavily on decisions of other states that hold that injuries suffered while travelling to or from a medical examination or a rehabilitation program as a result of a compensable injury are also compensable. See, for example, *Rodgers v. Workers' Compensation Appeals Bd.*, 168 Cal.App.3d 567, 214 Cal.Rptr. 303 (1985), *S. Cal. Rapid Transit Dist., Inc. v. Workers' Compensation Appeals Bd.*, 23 Cal.3d 158, 151 Cal.Rptr. 666, 588 P.2d 806 (1979) (en banc), and cases cited therein. According to the Claimant, the rationale of the holdings in these cases—that *but for* the initial injury that arose out of and in the course of employment, the employee would not have had to attend a rehabilitation program or a medical examination and, therefore, would not have sustained the second injury—should be applied to the instant case. The Claimant argues that "[b]ut for the compulsion of the [Employer]," he would not have experienced "the stress and anxiety incident to the deposition and not suffered a subsequent heart attack." In

our view, however, the rationale of the medical treatment cases is not applicable to the facts before us.

Although our research has uncovered but one case that is factually similar to the case *sub judice*, we believe that the reasoning of that decision is persuasive and provides instructive guidance for our analysis. In *Hendrickson v. George Madsen Constr. Co.*, 281 N.W.2d 672 (Minn.1979), the employee suffered a fatal heart attack shortly after he testified at a compensation hearing for an earlier work-related injury. The claimant, the employee's widow, filed a claim for compensation benefits. The issue before the Supreme Court of Minnesota was whether the heart attack arose out of and in the course of employment. *Hendrickson*, 281 N.W.2d at 673. The claimant's theory of an unbroken chain of causation between the original injury and the heart attack relied on the argument that, but for the initial injury, her husband would not have been placed under the stress of a compensation proceeding. The claimant relied principally on Minnesota decisions holding that injuries suffered while travelling to or from a doctor for treatment of a compensable injury are also compensable. *Id.* at 674.

The court was not persuaded by the claimant's arguments. It stated:

> Pursuing a compensation claim against the employer ... is not analogous to traveling to or from the medical doctor for treatment of a compensable injury. The rationale of cases allowing compensation for injuries during trips to or from the doctor is frequently stated in terms of the employer's obligation to provide medical treatment (often authorized on company time), and the employee's obligation to receive treatment and thereby avoid further medical complications. Thus, in many cases the travel is actually a "special errand." These considerations are not involved when a person pursues a compensation claim against the employer. Our conclusion is supported by the few decisions addressing the issue, which generally indi-

cate that injuries sustained while pursuing a workers' compensation claim are not compensable....

*Id.* at 674–75 (citations omitted). The court held that the employee's heart attack was not compensable. *Id.* at 675.

The facts in the case *sub judice* are nearly identical to those in *Hendrickson.* As we stated above, *Hendrickson* is persuasive, and we adopt its reasoning. Accordingly, we hold that a heart attack suffered by an employee after testifying at a deposition for a claim regarding an earlier compensable injury does not arise out of or in the course of employment and, thus, is not a compensable injury.

We now comment on the few factual differences that do exist between *Hendrickson* and the instant case. Unlike the Minnesota case, where the parties had stipulated that the stress of appearing at the hearing contributed to the employee's heart attack, here there is a dispute about whether such a causal relationship exists.[3] This dispute, however, is immaterial because even if it were clear, as in *Hendrickson,* that the stress of appearing at the deposition contributed to the heart attack, our holding would be the same. Thus, the dispute does not preclude us from affirming the trial court's grant of summary judgment.

In his brief, Claimant attempts to distinguish *Hendrickson* on the basis of another factual variation. He points out that in *Hendrickson* the employee had been pursuing a compensation claim for his own benefit, while in the instant case, it was the Employer that had pursued the appeal that led to the Claimant's deposition. Because he had already been awarded benefits and was no longer "acting voluntarily in his own interest," the Claimant argues, his attendance at the deposition was compelled by the Employer's appeal

---

3. The record indicates that upon being admitted to the hospital, the Claimant told doctors that he had been experiencing chest pains and indigestion for several years. In addition, the Claimant was a heavy smoker, and he had been told by doctors that he should lose weight to help his heart. Relying on these facts, the Employer has denied that the stress of appearing at the deposition contributed to the heart attack.

and was for the Employer's benefit, and, therefore, the heart attack arose out of and in the course of employment.

We think this is a distinction without a difference. The fact that the appeal to the circuit court was brought by the Employer does not mean that the Claimant was no longer "pursuing" his claim. Rather, the Claimant was merely on the other side of the line of scrimmage; he went from offense to defense. Both sides were still trying to win the same contest, and whoever had initiated the stage of proceedings during which the injury occurred is irrelevant for purposes of determining whether the heart attack was a compensable injury.

The Claimant's remaining arguments give us no pause. He argues that his heart attack is compensable because of the rule that a subsequent injury that is causally related to the first injury and flows as a direct consequence of the initial accident is compensable. In support, he cites three Maryland cases: *Unger & Mahon, Inc. v. Lidston*, 177 Md. 265, 9 A.2d 604 (1939), *Great A. & P. Tea Co. v. Hill*, 201 Md. 630, 95 A.2d 84 (1953), and *Williams Constr. Co. v. Garrison*, 42 Md.App. 340, 400 A.2d 22 (1979). In *Lidston*, the claimant injured his ankle at work. Over one week later, the ankle was still swollen and painful, and as the claimant climbed some stairs, he felt a sudden, sharp pain, causing him to fall and fracture his hip. 177 Md. at 268, 9 A.2d 604. The Court of Appeals held that the issue of whether the later injury arose out of and in the course of employment was properly submitted to the jury because rational minds could conclude that there was a causal connection between the ankle injury and the fall by which he injured his hip. *Id.* at 270, 9 A.2d 604. No intervening cause interrupted this causal chain. The other two cases also involved situations in which the subsequent injury was a direct and natural consequence of the first accident. *See, e.g., Hill*, 201 Md. at 632, 95 A.2d 84 (subsequent fracture of leg in the same place as the original fracture); *Garrison*, 42 Md.App. at 342, 400 A.2d 22 (dizziness caused by initial

accident resulted in subsequent fall off of a ladder and injuries).

These cases are distinguishable from the case *sub judice*, where there was no evidence that the Claimant's heart attack was medically related to the original injury to his knee. In the above cases, the second injuries were caused by initial injuries that were very painful or weakened the affected limb. In the instant case, it is clear that there is no medical causal connection between the injury to the Claimant's knee and the heart attack he suffered ten years later.

The Claimant also relies on *Sica v. Retail Credit Co.*, 245 Md. 606, 227 A.2d 33 (1967), and *Turner v. State, Office of the Public Defender*, 61 Md.App. 393, 486 A.2d 804 (1985), as authority that Maryland recognizes as an important factor in determining compensability the compulsory nature of the employee's attendance at events where the injuries occurred. The Claimant suggests that because he was compelled to attend the deposition in connection with an appeal brought by the Employer, his heart attack is a compensable injury. This argument is without merit.

*Sica* and *Turner* recognized that an injury occurring while the employee is participating in certain employer-sponsored recreational or social activities arises out of and in the course of employment. The rationale of these holdings is that some social activities are sufficiently work-related to be considered an incident of employment. The Claimant correctly states that one factor that courts consider in determining whether an activity is work-related is the presence of substantial pressure or actual compulsion by the employer upon the employee to attend and participate. *See Sica*, 245 Md. at 614, 227 A.2d 33. The Claimant's reliance on these cases, however, is misplaced. A deposition is ordinarily not a recreational activity. Also, the Claimant's attendance at the deposition was not compelled by the Employer, but by the Maryland Rules of Procedure, as stated earlier. Finally, the rationale of these recreational event cases contemplates the existence of an employer-

employee relationship. We have already observed that the Claimant's deposition and subsequent heart attack occurred several years after the Employer terminated his employment.

■ The courts of this State are bound to construe liberally the Workers' Compensation Act in favor of injured employees, consistent with the Act's benevolent purpose. The Act should not be construed, however, to cover situations not encompassed by its purpose. In the case *sub judice,* we recognize, as the Supreme Court of Minnesota did in *Hendrickson,* that we are being asked to extend, by judicial decision, the coverage of a comprehensive body of important social legislation. The extension sought in this case could easily lead to coverage of injuries whose relation to the initial injury or to the employment relationship is even more attenuated than the link between the employment and the heart attack in this case. Such an expansion of coverage is not our province. We agree once again with the reasoning in *Hendrickson:*

> Considering the history of workers' compensation as a pure creature of the legislature, it would be an improper exercise of the judicial function to extend coverage to nonwork-related events occurring during the compensation claim process. Any extension of coverage to such injuries is properly a matter for legislative action.

*Hendrickson,* 281 N.W.2d at 675.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.